R.A. Amikata Birchland, Ass. Masha Chapa, R.U. Ziavoli, D.R. Gregory, D.R. J. Friteri. And, ladies and gentlemen, we apologize for being late. We've had a rather busy morning, and we were having an animated discussion, which we will  All right. You may be seated. Thank you. You may proceed. Good morning, Your Honors. Good morning. May it please the Court, my name is Masha Chapa, and I represent the plaintiff at Blount in this case, Mr. Bujnowski. Could you put the microphone down just a bit? I'm much shorter than the last two people that were here. I apologize about that. Thank you. Even with high heels. We're here today with regards to what we believe was the improper granting of a motion      He is guilty of the following crimes. He is guilty of the following crimes. He is guilty of the following crimes. that the case at hand was very similar to the Buccellaris case. And a lot of the analysis during oral arguments and in the oral decision that the court rendered really looked at Buccellaris and comparing this case to Buccellaris. So I would like to start, as I did in my brief, looking at some of the key differences between this case and that case. And I think the most important issue is the surface from which the two plaintiffs jumped.  And I think that the plaintiff in Buccellaris, as well as the accompanying case, both plaintiffs jumped from a seawall. And what the court in Buccellaris, in its analysis, found very relevant was what was the purpose of the seawall. The seawall, which was bordering on Lake Michigan, had two main purposes. The first was to prevent erosion. And the other one was to keep the waters of Lake Michigan, which had varying sea levels as well as very large tides, away from the seawall. And in both of those cases, the seawall was not built for any other purpose. It was not there to allow people to jump off of. It was not there to dock boats. It was not there to dock jet skis. It was not there, there were no staircases to allow people to go swimming into the area. In fact, in the accompanying case, there was even rocks underneath the area of the seawall showing what a danger it was underneath the seawall. In this case, we've got a very, very different set of facts. First of all, you have a man-made pier, a pier that extends off of a two-foot retaining wall and a 25-foot pier that goes into a lake. This isn't a lake like Lake Michigan. This doesn't have large waves. It doesn't have varying depths. This is, although it is a larger lake, it is a very calm lake. There aren't any waves in this lake. This isn't something that is anywhere close to what Lake Michigan is. And the most important thing is, what was the purpose for this pier? This pier was used to dock boats to allow patrons of the lake to come onto defendants' paid property for them to enjoy their bar, their restaurant that they maintain on their property. It was there, there was actual posts there for people to dock boats and people to dock jet skis. And we believe that this dock created two very important things in the analysis for open and obvious. One was, what was the plaintiff, as a reasonable person, what was his understanding of the purpose of the pier, why it was there, and whether or not it was safe to jump in the water. And the second is, is by building this pier and actually inviting patrons onto that pier, whether or not the defendant should have anticipated the harm. But don't we know from the law that water is a place, a lake, a river, a pool, they are all, they can all be dangerous. They can be shallow, they can be rock smooth, they can be a lot of things. And it is up to the person who looks at that water to ultimately make a decision. Not be notified by someone else that doing that is not a good idea. Correct, Your Honor. And what's important about the open and obvious isn't the lake itself. It's not the fact that there's a large body of water. But it's, as Your Honor said, it's whether or not the water is shallow or whether there is a risk of drowning. So what does the pier do? What significance does the pier have in this? It's built for exactly what you said. There are people who are going to be there and people were diving off of it that day. There's no question that he saw people dive or your client saw people dive. But how does, why does the pier make the difference here? In other words, if I can just add to that too, why would that saddle the defendant with a duty to foresee or anticipate injuries? Because I believe if we look at the court's analysis in Boucheler's as well as Jackson, which is the other case that we rely on, the court analyzes what it is that the defendant should anticipate based on what the structure was that the plaintiff jumped from. And I believe in this case, the fact that the plaintiff was using it for its very intended use. The standard is that of a reasonable person. And a reasonable person, I believe that there are sufficient facts for a jury to feel that a reasonable person would think that a pier, in this case on the lake as it is and in the pictures that were submitted with the various briefs, show that this created a swimming hole. This created a way for someone to get in and off of the water. Moreover, someone could be fishing on that boat. Someone could slip while they're docking their boat and it's a wet surface coming on and off. There are many reasons that the defendant should have anticipated a harm from people using this pier for the exact purpose that they built it, that being a way for patrons to get in and out of the lake. They created a means for someone. They invited a way for someone to get in and out of the water. Well, now, wait a minute. Getting in and out of the water is different than diving and swimming. Is it not? Correct. I do agree with that and my response to that would be unlike Buccellaris, in this case, number one, we have a defendant who has a for-profit property that is gated. He can control who comes on and off the property. They collect money for that. And more importantly, there was no diving warning. Yes, was there a sign with 13 bullet points, which is the standard issue state of Illinois health warning? Yes, there was. And on those 13 bullet points that were at the front of the property on one of many paths to the lake, but unlike Buccellaris, there was no diving sign. There was no shallow water sign either leading up to the pier on the 25 feet going to the edge of the pier and the argument for us would be it would have been such a minimal burden for a defendant to just take a can of spray paint and a little symbol and put a no diving sign on there or a sign that says shallow water. By opening his property to the general public, by actually charging a fee, as the court's analysis saw in Jackson, the plaintiff or anyone entering that property has a reasonable expectation that the property will be prepared for their use and that it will be made safe for their use. Must they anticipate every harm? Absolutely not. Must they make the premise absolutely safe? Absolutely not. But in this case, it would have been a minor burden on to them to place that sign on there. And if that sign would have been placed on there, then we would be looking at a completely different set of facts. How is your position consistent with the case here in the second district? Are we even to look at the last two factors if we have an open and obvious condition and no exception applies? Well, we are not looking at an exception. I do understand that. But we've also got the Bruns versus City of, and I'll probably mispronounce that, but Centurylio, which is also a case from the Illinois Supreme Court where the court very clearly stated that even if we have the first two factors showing that it is open and obvious and therefore going against imposing a duty, we still have to look at the last two factors and that would be both the magnitude and the burden. And in this case, I believe when comparing it to that case as well as the Bruns case, we're looking at a case where the property of the defendant is not that large. We are looking at a for-profit area where they are making money for having people enter their property. And we're not looking at a government entity where this would extend to a very large, in other words, this will not create a very large difference in what is expected now. When you walk into a pool, whether it be a park district or a private pool, there's a reason why it says no diving or it says eight feet. And that's because people come in and yes, I understand at a pool one might be more distracted, but they're not going to be any more distracted than they will on a lake where there's boats and jet skis and different things going on. Now, Plinta has not stated that he was distracted. However, I believe that those types of warnings on there are because they need to make their property reasonably safe for people who they invite onto their premise and charge for an admission fee. That invitee licensee distinction, though, is no longer current, is it? Correct, and I'm not looking at it as an invitee licensee. Isn't that what you're saying, though, that if it's for-profit, if they're charging a fee, if they're making money off of you, what you're essentially saying is they should take additional steps? What I'm saying is that I'm not looking at it as an invitee licensee. I'm drawing the difference as a for-profit as opposed to a not-for-profit. Where is the authority for that? I believe that that would be partly the analysis on the Jackson case as well as some of the analysis in Bucheleras where they talked about it being a government entity and them wanting the utility and in this case, this isn't a public beach. This is a private beach and as the court's rationale in Jackson was, was that by having it be a closed-off property, by having it be a for-profit property where the actual resort itself in Jackson as in this case was created for people to come to enjoy the lake, to enjoy the water, to go swimming, to play volleyball, to barbecue. It's exactly like Jackson and the court in its analysis was very clear both not only on the factors of the traditional factors on the duty but also in terms of anticipating harm was that by creating a resort area and inviting people to come to that area to use it for the specific purpose of enjoying the lake, the defendant should anticipate the harm and more importantly by charging money to enter  the defendant has actually taken on or should take on a duty to make the premise reasonably safe for the people that are coming and that are paying money to get on that resort and I believe that the factors here parallel that exactly. Are there beaches provided or a beach provided at this resort? Yes, there is a beach as well. And is it close to this pier? Yes. And what happens is you've got the beach area and then there's a grass area that has some hills which is where the restaurant is and the pier comes off of the grassy area and the pier is built off of a two-foot retaining wall that defendants themselves built. So they created this retaining wall to build up the area where the grass is and then the pier is actually off of that two-foot retaining wall  off of that two-foot retaining wall. So it's open and obvious it's still water. The building or the construction, architecture of construction doesn't indicate anything about the water, does it? It doesn't but I think one of our arguments was when we look at open and obvious the condition is what is underneath the water that being whether it was too shallow and our argument is that's how the water itself looks and by that material change they've actually altered the lake in a way where one would believe not only from the pier but also from the retaining wall that the water is actually deeper than it is and in fact with the poles there to dock boats and to dock jet skis that provides even more of an appearance of feet into the water which again would give one a belief that the water there is deeper. So again it's not the material changes actually to the top of the water and therefore we believe that if anything it actually obscures the fact that the water underneath the pier was too shallow for our client to dive into. I need to ask a little clarification please. Is this water that is unknown? What I'm saying is it's not the lake itself it's either the risk of drowning or the risk of diving into water that is too shallow and in this case it was the water being too shallow. But the cases don't really support that particular perspective of open and obvious do they? I mean it's the body of water Justice Hutchinson was asking questions surrounding that it's not unconditioned necessarily under the water that's quote open and obvious. Correct and that's what I'm saying is by materially changing the appearance of the lake on the surface of the lake they have actually obstructed the fact that the water was too shallow for my client to dive into. By building a pier? By building the pier yes and inviting its use that the defendant should have anticipated that people will dive off of that pier that people will see it as a swimming hole and a way to get in and out of the water. Even if there is a beach provided for that very purpose and there's no ladder on this pier so that if they went in at the beach they could swim over to the pier and climb out? Oh I apologize I thought you meant was there a ladder leading up to the pier you're asking if there's a ladder on the pier? Yes I mean to get on from the water to get onto the pier. Like if you were to dock something? No no if you were in the water. Correct. Could you get on a ladder and get out? Yes. Is that made for boats or is that made for people? I don't believe that there was a distinction made one way or the other however it was said that people use the dock in order to get on to the property to access the restaurant and the bar area. And just this this lake is do you know how many acres it is? I don't but I know that the defendant's property itself there's lots of private homes on this lake and then there's the defendant's property where they bought what could have been a private home but actually opened it to the public and built additional structures onto it. Okay. Thank you. You have an opportunity for rebuttal. Counsel I will not try to say your name and butcher it so welcome and you can tell us your name please. Thank you Your Honor. Greg Federico for the defendant. First I want to address the court and let you know that I'm going to stand on the brief I'm not going to reiterate what else is in the brief. No you need to pull it up a bit. Thank you. Yeah I'm going to stand on our brief and what I would like to do is use this time to kind of rebut some of what she said but the first thing that comes to mind is she said that she didn't she believed that there were stairs that were leading from the beach area like leading they were on the pier so that swimmers could come from the beach area to climb up the pier but I don't believe there's any evidence in the record of that that was not really addressed. The pictures are a little difficult to see that's why I was asking. Okay. Yeah the she talked about two main main issues in the case and the first is that she said that the lower court erred by declaring that this particular lake was not an open and obvious condition as a matter of law. In the same argument she conceded that it was an open and obvious condition but she's trying to say    open and obvious. How could that be open and obvious? I mean the very nature of the case is that it's an open and obvious case. It's not an open and obvious case. The nature of an open and obvious condition means that it carries an inherent risk. It carries the warning is inherent of the risks involved. In other words the lake can be too deep and somebody could dive off a pier and they could drown and they may not surface or it could be too shallow and they    There could be things underneath the surface of the water that are concealed, rocks, whatever. It's not an open and obvious condition. It's not an open and obvious condition. And the plaintiff in this case he testified that he went to the edge of the pier and he stood at the edge of the pier and he looked at the water and he admitted that he did not know how deep or shallow the water was. He said the water was murky. He understood there      associated with that. That was his decision and he was able to dive in knowing the risks that were associated with that. And he was able to dive in knowing the risks that were  that. He made a bad decision. His decision alone, he made a bad decision. The law in Illinois states that a landowner, whether we're charging a fee or not, in this case the plaintiff is a business invitee and the duty is that of reasonable care to business invitees. And so we look at the first two factors. Was the injury reasonably foreseeable? We have open and obvious here and we also look at likelihood of the injury. Does that mean that in this situation we don't look at the other two factors that usually are involved in imposing a duty that is the burden of guarding against it? Exactly. And the consequences of putting a burden on the defendant? Do we look at those two factors too? We consider all of the traditional factors. Well then, was the burden of guarding against this too great to put up a sign that would have an X through it and a note that said no diving? How much of a burden would that be? If we're looking at the other two factors? Right. Well, that's the thing. Plaintiff doesn't really want to focus on the first two factors and the law is very clear that when Buccellaris says that conditions such as fire height and bodies of water such as this lake here are by definition open and obvious conditions. Given that there are no exceptions, we still have to look at the traditional duty analysis. We look at all four factors but the first two. Because of the first two factors the foreseeability of the injury and the likelihood of the injury are very slight. Okay. And that carries a lot of weight. And then we still can look at the third and the fourth factors. But I would also maintain that the burden because of  the foreseeability being slight which says that we can reasonably anticipate that one who encounters the open and obvious condition will appreciate the risk and the likelihood of the injury. And that the risk of harm and will avoid the risk by using ordinary care. In other words, the lake itself is a huge sign that the plain is safe. Okay. But accepting all of that, how would you analyze the other two factors then if you agree they should be   certainly, yeah, I would touch on those. And I would say that the magnitude of the burden in this case would require the two factors. The first factor is the ability of the defendant to hire additional personnel to make sure that not only people read the signs but that they understood the signs. And we had signs and in this case he didn't even see. Similarly in Butelaris as well as the Downwind case which is right on point, that's a case where the point of point dives off the pier which was 100 feet from the shoreline. In this case it's 25 feet. And in Downwind there were no signs. And Butelaris had been holding signs that the controlling factor is that the plaintiff dove into an open body of water of unknown depth and the landowner has the right to anticipate that whether or not there are signs present. So, and Butelaris sights Downwind as well. In that case again, no signs. Here the pier is 25 feet off the shore and Downwind is 100 feet. And the judge in the lower court indicated that the fact that the pier was 25 feet from the shore, well you can infer the lake is either deep or shallow at that point. And just because we have jet skis coming to the dock or boats, I mean, I have a boat myself and I know that you can dock a boat in two feet of water. That's certainly not deep enough where you can safely dive head first into the water.   not the case here in Illinois. We have, I don't know, five or six different cases maybe even more than that specifically similar to the facts here that talk about duty and what factors should be taken into account. And there are some cases, salami, blue, either exception applies, that the last two factors cannot outweigh the first two factors. Are you saying that or are you saying that we should, the other line of cases, Buccellaris, Bazanas, and perhaps Sushi can be read to say that they can be or should be also taken into account by the first two factors. And I don't          I don't know. I don't know. I don't know. I don't know. I don't know. I don't know.   know.  don't know. I don't know. 3 What would you they interest do you think we need to look at the other? And why? Because I think it's irrelevant. If there's enough of a warning there, why do you need to consider the magnitude of, you know, why do you need to add more signs or hire extra personnel to make sure people are reading the signs? And then the burden, the consequence of the burden, it makes it more costly for the proprietor. It makes doing business more inefficient. And the law stands and requires a duty of reasonable care. So... In essence, are these later cases creating water as a special category possibly? We know it's dangerous and therefore be careful? I believe it's similar with fire and height. If you're on a bridge, why do you need to put a sign? Hey, jumping off the bridge could be hazardous to your health. Or putting your hand in the campfire at a campground could be hazardous. You know, if there's      can't jump off the bridge. So there might be a reason for the distinction. And why? Because it's just common sense? Well, there are other open and obvious issues. You  there's a law in Congress that says that it's a given. By definition, fire, height, bodies of water are open and obvious conditions which carry their own warning of possible dangers. And they even say you can reasonably anticipate that children would understand, appreciate the risk of the dangers and take steps to avoid the risks. So children are hotly contested in this process. But they still remain, it still remains open and obvious. I understand that. But just a few more things I wanted to address that she had discussed. I believe that the seawall versus a pier, that's a distinction without a difference. Again, the controlling factor is that the plain of Dover into a body of water of unknown depth. And that's a  without a difference. The lake itself, whether you have a sign there or not, there's no guarantee you would have read the sign. He already understood what he was doing when he got there. The lake itself, according to the case law, acts as a giant sign right there at the edge of the pier to exercise ordinary care and not do something foolish. Why is the seawall a distinction without a difference? Isn't there a difference here between a seawall where the park district was concerned about curtailing the use of the public on a lake front as opposed to a private resort putting up a pier? Butularis was analyzed under a common law standard. Butularis also cited the down case and basically gets back to it's not that it has really nothing to do with the seawall or whatever instrument somebody uses to dive in the water. It's the ability to open a body of water itself which presents the open and obvious condition. Jackson, she talks about Jackson and she said that in that case they looked at the third and fourth factors but in Jackson the court held against the defendant because the first two factors, the likelihood and the stability were great, very significant compared to this situation. That case is totally distinguishable where the proprietor has an underwater pipe or mechanism that was moved in different areas and regulated the water and levels and it was moved around in areas that they knew people were swimming so one day it could be safe to swim in a particular area or jump in, but they moved it around and another day you could jump in the same spot and injure yourself which is what happened in that case. With Buccellaris, the open and obvious aspect might be similar because of the body of water but what about the burden? Is there a different burden? If we're  the case law it would be different. In Jackson getting back to the third and fourth factors they had some other mechanisms so they didn't even need to use that apparatus anymore. All they had to do was basically take it out of the lake and it would have cost them anything to do. Wouldn't it be a little more expensive? The case law doesn't require that. If we're talking about a $100 sign that says channel water. If we want to skip over the first two factors and go right to the third then yeah we could have put a sign up there but again there's no guarantee. And again the law doesn't require it. We just have to maintain the premises in a reasonably safe condition and that allows us to reasonably anticipate and expect that people who encounter a danger so open and obvious such as a body of water which could have an unknown depth. In this case the point of Jackson though is that it was very minimal cost if any to just remove it right? Likewise in a case such as this it's a very minimal cost to just put an 8 by 10 sign that says hey this water is pretty shallow here. What's the difference? I'm going to concede that point to maintain some credibility but yeah we could have put a sign there but again you know it's so open and obvious and it's so that really no sign is necessary. Alright counsel we have no other questions    in this case. Salami they didn't even analyze the last two factors and then the Martinez and that was the rocket jumping trampoline case and then the Martinez case another trampoline case basically says the result of the four factor test is a foregone conclusion when it's open and obvious. Do you want to tell me tell me your perspective on that? Well I'll start by if I may your honor going to the Bruns case which is Illinois Supreme Court case which is very recent and the case that was brought forth by the Supreme Court    that was brought forth by the Supreme Court case which is the case that was brought forth by the Supreme Court case which is the acked Vermont Supreme Court case which took place in the case that was before the case that was before the case that was before the case that the defendant was facing the same questions that he  facing the same questions that he was facing the same  that the defendant was facing the same questions that he was facing the same questions that he faced the same questions that he was facing the same questions that he was facing the same questions that the defendant was facing     he was facing the  questions that the defendant was facing the same questions that he was faced the same questions that the defendant was facing the same questions that the defendant was facing the same questions that they were facing in court. Thank you. Thank you.  Thank you. Thank you. I believe the lower course decision should be overturned. Thank you. Thank you. Thank you for your arguments. Again we will take this matter under advisement. And at this point we will stand adjourned. Thank you.